IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROCK MORRIS,

        Plaintiff,

v.                                                Civil Action No. 1:04cv217
                                                (Broadwater)

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION/OPINION

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles XVI and II, respectively, of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f. The matter is awaiting decision on the parties' cross Motions for Summary Judgment and has been referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

## I. Procedural History

Rock Morris ("Plaintiff") filed applications for DIB and SSI on November 2, 1995, alleging disability as of August 7, 1995, due to right hip and bilateral shoulder problems (R. 56, 63, 81). Plaintiff last met the insured status requirements of the Act on December 31, 1998, and therefore must establish that he was disabled prior to that date in order to be insured for DIB (R. 444). 20 CFR § 404.101. The applications were denied initially and on reconsideration (R. 60, 66). Plaintiff requested a hearing, which Administrative Law Judge Michael F. Colligan held on December 9, 1997 (R. 29). At the hearing, the ALJ advised Plaintiff, who appeared without counsel, of his right

to counsel, and offered to continue the hearing in order for Plaintiff to obtain counsel (R. 31-32). Plaintiff stated he did not want counsel. Plaintiff testified at the hearing, along with Vocational Expert Jay Arthur ("VE") and Medical Expert psychologist L. Leon Reid ("ME"). On July 20, 1998, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Social Security Act (R. 19). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (R. 2, 303). Plaintiff commenced an action in this Court seeking judicial review of the final decision of the Commissioner (R. 380). On February 23, 2000, the Commissioner moved to remand the case back to the Administration to further evaluate Plaintiff's hip impairment and subjective complaints of pain and limitation (R. 379, 381). The Court granted Defendant's motion to remand on October 7, 1999 (R. 380).

On November 30, 1999, Plaintiff filed a second application for DIB and SSI (R. 415), alleging disability due to generalized arthritis and depression (R. 435). The State agency denied this application at the initial and reconsideration levels (R. 397, 404). Plaintiff requested a hearing.

The Commissioner consolidated Plaintiff's two applications (R. 611). On December 20, 2000, an ALJ held a supplemental hearing at which Plaintiff, now represented by counsel, testified along with a VE (R. 608).

On February 21, 2001, the ALJ found Plaintiff not disabled within the meaning of the Act (R. 371). Three and a half years later, in August 2004, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner in this matter (R. 347).

## II. Statement of Facts

Rock Morris ("Plaintiff") was born on May 5, 1964, and was 36 years old at the time of the

second Administrative Hearing (R. 56). He graduated from high school (R. 34). His past relevant work experience includes work in house construction, as a bull dozer operator, truck driver, and heavy equipment operator (R. 36-37). He spent two years in the Army and six in the Army National Guard, working primarily as an equipment operator. He was stationed for some time in Germany. He has not worked since 1995.

The records indicate Plaintiff was first treated for alcohol abuse while in the Army. He stated he used "everything but heroin" while in the Army (R. 232). He underwent rehabilitation in Germany to avoid court martial (R. 154). He was dropped in rank from E-4 to E-1 for being AWOL and for a court martial after an assault (R. 192). He had a second detox at the VA in 1993, but left without completing the program.

Plaintiff went into a 28-day program at the VA in August 1995 for alcohol and drug dependency. This is also Plaintiff's alleged onset date. He completed that program but decided he needed further inpatient care in a drug and alcohol-free environment, and was transferred to the Domiciliary Homeless Program at the VA in September 1995. He had apparently been unemployed and homeless for approximately four months at that time. The VA reported Plaintiff had a history of a slipped disc from high school wrestling, a right temporal aneurysm in 1983, and approximately six past motor vehicle accidents due to alcohol but with no injuries (R. 154). He was complaining of "some hip pain on the right side." X-rays "showed probably some arthritic changes." The pain was described as "moderate" (R. 204). He had decreased function and strength and ambulated with a cane.

A bone scan in August 1995, indicated Plaintiff's left and right hips appeared "unremarkable" (R. 290). It did indicate probable arthritic changes of the shoulders and ankles, however.

3

An orthopedic consultative examiner in September 1995 noted Plaintiff's x-rays showed degenerative joint disease and avascular necrosis,[1] and opined he would "eventually need total hip replacement" (R. 286).

A right hip x-ray in November 1995 showed degenerative arthritis of the right hip joint and accessory ossicles in the superior posterior portion of the acetabulum (R. 149). It could not rule out a stress fracture. Another orthopedic consultative examiner opined Plaintiff had "possible" avascular necrosis of the right hip (R. 195) and recommended an MRI. He also opined that Plaintiff would probably be unable to do any job requiring prolonged standing, walking or carrying heavy objects, but should be able to do any job that could be performed while seated.

Plaintiff filed his applications for SSI and DIB in November 1995.

An MRI of the right hip in December 1995, indicated there was no evidence of avascular necrosis, but there was "evidence for osteoarthritis involving the right hip with advanced osteophytes, joint effusion and moderate cartilage narrowing involving the anterior superior aspect of the joint" (R. 230).

In January 1996, Plaintiff told his VA doctors he had "been very hard on his right hip. He was active in sports – including wrestling, bronco riding, etc."

Upon discharge from the inpatient substance abuse program in January 1996, Plaintiff was diagnosed with alcohol dependency with a secondary diagnosis of degenerative joint disease of the right hip. His treating physician opined he was stable and competent and his rehabilitation potential was good (R. 152).

---

[1] Morphological changes indicative of cell death caused by blood loss to the area. DORLAND'S ILLUSTRATED MEDICAL ENCYCLOPEDIA, 1124-1225 (30th ed. 2003).

The VA granted Plaintiff a 30% service connected disability for traumatic arthritis of the right hip effective February 1996 (R. 103).

At a scheduled appointment at the VA in January 1997, Plaintiff complained of "much pain" due to arthritis (R. 232). He was now married and had three children, ages 4 months, three years, and 8 years (the oldest from his wife's previous marriage.) His main stressor was financial. He was getting $365.00 per month from the VA for his 30% impairment. The 8-year-old's welfare check was stopped, her father did not pay child support. His parents lived nearby and helped out some "buying cigarettes and diapers." He wanted to try for in increase in VA disability benefits, but would need another mobility test first.

Plaintiff reported to the VA mental hygiene clinic in March 1997, for a psychological evaluation (R. 295). He reported having anxiety and depression, being "mean to people," and anger beyond his control. He said his wife had sent him to get help. He was placed back on Zoloft and Trazadone, medications he had taken while in substance abuse treatment.

Plaintiff returned to the mental hygiene clinic in July 1997. The psychiatrist noted Plaintiff had depressive features and his judgment was fair, and diagnosed a substance induce mood disorder with depressive features and a GAF of 60[2] (R. 296).

At the first administrative hearing, in December 1997, Plaintiff testified he quit working in 1995 because he was "self medicating [him]self from the time [he] got out of the service up until then" (R. 38). He had been drinking himself to death, drinking all night and trying to work during

---

[2]A GAF of 51-60 indicates **Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflict with peers or coworkers). Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 1994). (Emphasis in original).

the day. He called the VA and "went in and stayed in the VA Hospital for about six months." At the time of the hearing, he had been out of the hospital for two years. He had not been drinking since that time. The VA sent him to the pain clinic to try to deal with his pain without self medicating with alcohol and drugs.

Plaintiff testified at the first hearing that the VA originally diagnosed avascular necrosis of the right hip, but later changed it to osteoarthritis (R. 39).

Dr. Charles Paroda, D.O. performed a consultative examination of Plaintiff on January 29, 1998 (R. 240). Plaintiff told the doctor he had avascular necrosis of the right hip. Upon examination, Plaintiff walked with a normal gait, and did not require an ambulatory aid (R. 242). He was comfortable standing, sitting, and supine. He had some tenderness with palpation over the right hip, and hurt with range of motion. He could only flex his hip to about 60 degrees, with pain. Straight leg raises were positive at 45 degrees bilaterally. Dr. Paroda diagnosed left hip pain – avascular necrosis by history, and arthritis.

Dr. Paroda completed a "Medical Assessment of Ability to do Work-Related Activities," indicating Plaintiff had no restrictions on lifting/carrying. He would be limited to standing/walking 4-6 hours per workday, and up to two hours at a time, due to avascular necrosis. His sitting was also affected, but he could sit "with appropriate breaks." He had limitations on climbing, balancing, stooping, crouching, kneeling, and crawling, the "check marks" for these limitations falling somewhere between "occasionally" and "never" (R. 247).

In April 1998, Richard Kang, M.D., examined Plaintiff (R. 476). An x-ray of Plaintiff's right hip indicated degenerative changes to the femoral head, but the femoral head remained reasonably spherical with reasonable space.

That same month, Ken Westerheide, M.D., examined Plaintiff and reported his x-rays and

6

MRI showed no "obvious evidence of avascular necrosis, nor osteoarthritis of the right hip radiographically to explain his severe right hip pain" (R. 475-476). Dr. Westerheide opined Plaintiff was not a candidate for hip arthroplasty, and noted Plaintiff's complaints of pain improved with medication.

July 1998 x-rays indicated Plaintiff's lumbosacral spine was normal and his hips showed no change since August 1995 and no evidence of avascular necrosis (R. 516-517).

As already noted, the first ALJ found Plaintiff not disabled on July 20, 1998. The Appeals Council denied his request for review, and Plaintiff filed an Appeal with this Court in July 1999. He filed his Motion for Summary Judgment in January 2000. The Commissioner did not file her own Motion for Summary Judgment, but instead moved the Court to remand the case in February 2000, "to further evaluate Plaintiff's hip impairment and subjective complaints of pain and limitation" (R. 379, 381-382). The Court granted the Commissioner's Motion to Remand.

In October 1999, John Perri, M.D., chief of orthopedics at the VAMC in Pittsburgh, examined Plaintiff and reported his x-rays and MRI showed mild osteoarthritic changes, but did not explain his complaints of severe hip pain (R. 475).

In November 1999, the VA awarded Plaintiff a 100% service connected disability for Major depressive disorder, effective July 1, 1998 (R. 467). His rating for his hip remained at 30%. His award entitled him to $2,279.00 monthly. The VA decision indicates Plaintiff's major depressive disorder was related to his service-connected hip arthritis. A 100% rating is indicative of:

> [E]vidence of total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or

7

place; memory loss for names of close relatives, own occupation, or own name.

(R. 470). The basis for Plaintiff's 100% disability award was stated as follows:

> In 1997 he was followed for a substance-induced mood disorder with depressive features. In 1998 he was more compliant with his medication regimen. He was irritable, with blunted affect and depressed mood, no formal thought disorder, denied suicidal/homicidal ideation, some insight. Impression was mood disorder due to his medical condition of degenerative joint disease and severe pain which interfered with the work he used to do and inability to take care of his children. In 1/99 he was considered unemployable due to his medical/mental condition, and his mood was due to his hip problem. VA exam found a major depressive disorder very severe secondary to his service connected hip disorder. The pain has caused a marked depression. This is dominating his entire life and renders him virtually unemployable, and unable to function normally. He is considered competent. GAF was estimated as 30.[3]

(R. 470).

In December 1999, a repeat MRI of Plaintiff's hips showed a "minor abnormality," with osteophytes on the right femoral head and small right hip effusion, but no avascular necrosis or other significant abnormality (R. 474).

On December 23, 1999, Plaintiff told his VA psychiatrist he "was relieve[d] some what [sic] now because he received 100% SVC" (R. 483). He still "has feeling of depression." His current GAF was 55 (moderate symptoms).

In March 2000, the VAMC reported that Plaintiff's MRI showed no further changes (R. 600). Dr. Perri reported that Plaintiff had full strength in his right lower leg, intact sensation, and normal

---

[3] A GAF of 21-30 indicates **Behavior is considerable influenced by delusions or hallucinations OR serious impairment in communication or judgment** (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) **OR inability to function in almost all areas** (e.g., stays in bed all day, no job, home, or friends).

8

leg length (R. 602). He again ruled out avascular necrosis, but diagnosed right hip degenerative joint disease. He advised Plaintiff to exercise and lose weight.

In April 2000, State agency reviewing physician Fulvio Franyutti, M.D., opined Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk for six hours of an eight hour workday, and sit for six hours in an eight-hour workday (R. 525, 529). He further opined Plaintiff could occasionally perform all postural movements, including stooping.

In August 2000, Plaintiff was examined by Pravin Patel, M.D. (R. 341). Dr. Patel noted "a history of avascular necrosis of the right hip due to alcohol abuse." He found Plaintiff could walk without a cane, but with some difficulty (R. 342). He noted muscle weakness of the right leg with no sensory deficits. There were deformities of the ankles, knees, and right elbow. Plaintiff was unable to squat and arise or walk on his toes or heels. There was some restriction of range of motion of the lumbar spine and the right hip and right shoulder. Dr. Patel diagnosed avascular necrosis of the right hip joint, osteoarthritis and degenerative disc disease, right leg neuropathy, seizure disorder, history of alcohol and drug abuse, gastritis, anxiety and depression, history of heavy smoking with dyspnea on exertion, and a benign growth near the hilum (R. 342). He opined Plaintiff could lift only five pounds and could stand/walk only ½ hour without interruption. He could sit one hour at a time. He could never climb, balance, stoop, crouch, kneel or crawl. He would have further restrictions on reaching, handling, and pushing/pulling due to arthritis in the shoulders. He would also have environmental restrictions due to shortness of breath, cough, nervousness, depression, anxiety, and benign growth in the lungs (R. 343-344).

On December 15, 2000, A. Massoud, M.D., Plaintiff's VA psychiatrist, opined Plaintiff had a poor ability to relate to co-workers, deal with the public, deal with work stresses, maintain

attention/concentration, understand, remember, and carry out detailed or complex job instructions, maintain personal appearance, relate predictably in social situations, and demonstrate reliability. He had only a fair ability to perform all other functions (R. 605-606).

At the second administrative hearing, held on December 20, 2000, the ALJ asked the VE if there would be any jobs available for an individual with Plaintiff's background that included the following limitations: lifting limited to five pounds; no prolonged standing or walking; no prolonged sitting; no bending beyond 80 degrees; need for a cane for prolonged walking, such as to the restroom; moderately limited recent memory; mild deficiency of social adaptability; able to relate to others but best able to perform his or her own work at his or her own workstation; not entailing intensive teamwork; not entailing direct contact with the public; and with the ability to perform simple, repetitive, multi-step tasks with simple or detailed, but not complex instructions. (R. 650).

The ALJ testified in response to this hypothetical that there were a significant number of jobs in the national and regional economy (R. 649).

### III. Administrative Law Judge Decision

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. §§ 404.1520 and 416.920, the ALJ made the following findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December 31, 1998.

2. The claimant has not engaged in substantial gainful activity since his alleged onset of disability date.

3. The claimant has degenerative joint disease of the right hip, history of alcohol and drug abuse, and major depressive disorder, impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

10

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527 and 416.927).

7. The claimant has the following residual functional capacity: he has the ability to perform the demands of sedentary work, with certain modifications. He can lift up to five pounds occasionally or frequently. He is unable to perform jobs requiring prolonged standing or walking, with these activities done primarily at 30 minute intervals. He can perform no prolonged sitting. He is able to bend to 80 degrees. He is able to walk without a cane, but with some difficulty and therefore would need an assistive device for prolonged walking, i.e. to the restroom. His recent memory is moderately limited, but immediate and remote memory are within normal limits and he is able to understand, remember and carry out simple and detailed instructions but not complex instructions. He has a mild deficiency of social adaptability but is able to appropriately relate to others. He is best able to perform his own work at his own workstation and not as part of extensive teamwork or jobs requiring direct contact with the public. His concentration, persistence and pace are within normal limits and he can undertake jobs requiring the completing of simple, repetitive multi-step tasks.

8. The claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1545 and 416.965).

9. The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

10. The claimant has a "high school education" (20 CFR §§ 404.1564 and 416.964).

11. The claimant has no transferable skills from any past relevant work (20 CFR §§ 404.1568 and 416.968).

12. If the claimant could perform the full range of sedentary work, Rule 201.28 would apply to the claimant and direct a finding of not disabled.

13. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).

14. Although the claimant's nonexertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as mica plate layer by hand, taper, printed circuits, document preparer, and type copy examiner.

15. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(R.369-370).

## IV. DISCUSSION

### A. Scope of Review

In reviewing an administrative finding of no disability the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Fourth Circuit held, "Our scope of review is specific and narrow. We do not conduct a de novo review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'" Hays, 907 F.2d at 1456 (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968)). In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law: "A factual

finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

### B. Contentions of the Parties

Plaintiff contends:

1. The prior ALJ's failure to perform a proper and complete listings evaluation and failure to call a medical expert to assist with the listings analysis was repeated by this ALJ, and once again, requires a reversal of this decision;

2. The ALJ erred in failing to evaluate the postural limitations offered by both consultative examiners and in failing to find Mr. Morris disabled under SSR-96-9p; and

3. The ALJ's credibility finding is improper under 96-7p and unsupported by substantial evidence.

Defendant contends:

1. Substantial evidence supports the ALJ's decision that Plaintiff's hip impairment did not meet or medically equal listing 1.03;

2. Substantial evidence supported the ALJ's decision that Plaintiff could perform a range of sedentary work; and

3. Substantial evidence supported the ALJ's determination that Plaintiff's subjective complaints of pain and limitation were not credible.

### C. Listing 1.03

Plaintiff first argues that the current ALJ, like the prior ALJ, failed to perform a proper and complete listings evaluation and failed to call a medical expert to assist with the listings analysis. Defendant contends substantial evidence supports the ALJ's determination that Plaintiff's hip impairment did not meet or equal Listing 1.03. In Cook v. Heckler, 783, F.2d 1168 (4th Cir. 1986)

13

the Fourth Circuit instructed ALJ's to identify the relevant listed impairment(s) and then compare each of the listed criteria to the evidence of the claimant's symptoms. The Court stated: "Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination."

Here, the ALJ's entire finding regarding the physical listings is as follows:

> At step three of the evaluation process, it is found that the claimant's impairments, considered singly or in combination, do not meet or equal the requirements of any impairments listed in Appendix 1, to Subpart P of Regulations No. 4. The diagnostic studies fail to establish that the claimant's arthritic problem involving the right hip satisfied the requirements of Section 1.03 of Appendix 1.

The undersigned finds this analysis insufficient under Cook. Although the ALJ identified a pertinent Listing, 1.03, he did not compare each of the criteria in that listing to Plaintiff's impairment. This is not a case where it was difficult to identify a relevant listing. The record clearly indicates Plaintiff does suffer from arthritis of the hip, and the ALJ determined this impairment was severe. Further, Plaintiff's counsel argued that Plaintiff met 1.03 in her Motion for Summary Judgment in the first claim (R. 310). After that Motion was submitted, the Commissioner moved this Court to remand the claim for further proceedings at the administrative level. After the claim was remanded to the Appeals Council, the Appeals Council expressly Ordered the Administrative Law Judge to consider:

> [T]he claimant's daily activities and medical evidence regarding the use of pain medications, a cane, and whether he has an impairment of the severity that meets or equals the listings in Appendix 1 of Social Security Regulations Number 4 . . . .

(R. 301). The second ALJ did not follow the order of the Appeals Council in considering whether Plaintiff met Listing 1.03, and did not, in fact, perform any more detailed discussion of any of the

14

above considerations than had the original ALJ.

## D. Postural Limitations

Plaintiff next argues the ALJ erred in failing to evaluate the postural limitations offered by both consultative examiners and in failing to find Mr. Morris disabled under SSR 96-9p. Defendant contends substantial evidence supports the ALJ's determination that Plaintiff could perform a range of sedentary work. 96-9p provides, in pertinent part:

> An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

Plaintiff contends he has a complete inability to stoop based upon the opinions of examining physicians Patel and Paroda. Defendant contends Dr. Paroda opined Plaintiff was able to stoop "less than occasionally, but more than never," and also that Dr. Paroda's opinion was not well supported by medically accepted clinical and laboratory diagnostic techniques. Defendant argues Dr. Patel's opinion was likewise not well supported by medically accepted clinical and laboratory techniques. The undersigned notes two problems with this argument. First, the ALJ did not indicate the weight he gave either Dr. Paroda's or Dr. Patel's opinion. The Fourth Circuit stated in Gordon v. Schweiker, 725 F.2d 231 (4th Cir. 1984):

> We cannot determine if findings are supported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. *See, e.g., Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980); *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979); *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir. 1977). As we said in *Arnold*: The courts . . . face a difficult task in applying the

15

substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all the evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." 567 F.2d at 259. Neither the ALJ nor the Appeals Council indicated the weight given to the various medical reports submitted by the appellant. We therefore remand to the district court with instructions further to remand the case to the Secretary with directions to the Secretary to reconsider the case and to indicate explicitly the weight accorded to the various medical reports in the record.

Second, the ALJ did not include any postural limitations in his hypothetical to the VE with the exception of bending more than 80 degrees. There is some dispute regarding whether Dr. Paroda opined Plaintiff could "never" perform posturals or could perform them "less than occasionally." He completed a form with check-marks much closer to the "never" column than the "occasionally" column. Clearly he found the most Plaintiff could stoop was "less than occasionally" (R. 247). Dr. Patel, on the other hand, unambiguously opined Plaintiff could "never" climb, balance, stoop crouch, kneel, or crawl (R. 344). Yet the ALJ did not include any limitation on stooping or any other postural in his hypothetical to the VE and did not indicate his reasons for rejecting those limitations. Because the Ruling states an ability to stoop "occasionally" is required in most sedentary occupations and a complete inability to stoop would usually result in disability, the undersigned finds the ALJ was required to include the alleged limitation in his hypothetical or provide the reasons for rejecting it in his decision.

The undersigned therefore finds substantial evidence does not support the ALJ's RFC or his hypothetical to the VE.

## E. Credibility

Plaintiff next argues the ALJ did not follow the two step sequential process for evaluating the issues of pain and credibility mandated by SSR 96-7p. The Fourth Circuit has held that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984) (citing Tyler v. Weinberger, 409 F.Supp. 776 (E.D.Va.1976)). The Fourth Circuit has developed a two-step process for determination of whether a person is disabled by pain or other symptoms as announced in Craig v. Chater, 76 F. 3d 585 (4th Cir. 1996):

> 1) For pain to be found to be disabling, there must be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers*. The regulation thus requires at the threshold a showing by objective evidence of the existence of a medical impairment "which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Cf. Jenkins*, 906 F.2d at 108 (explaining that 42 U.S.C. § 423(d)(5)(A) requires "objective medical evidence of some condition that could reasonably be expected to produce the pain alleged"). *Foster*, 780 F.2d at 1129 . . . .
>
> 2) It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, *that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated,* See 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, *see id.;* any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.). *See* 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the

> pain, and any medical treatment taken to alleviate it. *See* 20 C.F.R.
> § 416.929(c)(3) & 404.1529(c)(3). (Emphasis added).

Craig, supra at 594. The Fourth Circuit also requires the threshold finding be made "expressly," holding the ALJ must "expressly consider the threshold question of whether [a claimant] had demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleges." Id. at 596. The Court held that the ALJ must determine whether the objective evidence could reasonably be expected to produce "the actual pain, in the amount and degree, alleged by the claimant." Id. at 594.

A review of the ALJ's decision shows he did not expressly make the threshold finding that Plaintiff did or did not have medically determinable impairments which could reasonably be expected to cause the pain Plaintiff alleges he suffers. Instead, he "proceeded directly to considering the credibility of [Plaintiff's] subjective allegations of pain." Craig, supra, at 596.

For all the above reasons the undersigned finds substantial evidence does not support the ALJ's credibility finding or his determination that Plaintiff was not disabled, according to the Act, at any time up to and including the date of the decision.

The undersigned finds ALJ's errors in this claim particularly significant because: 1) The Appeals Council expressly ordered the second ALJ to "reevaluate the medical opinions of record and the claimant's subjective complaints and residual functional capacity (including any nonexertional limitations established by the record) and [] cite the evidence which supports his conclusions as to the claimant's residual functional capacity" and 2) Plaintiff first filed his claim in November 1995, ten years ago.

## V. Recommended Decision

For the reasons above stated, I find that substantial evidence does not support the

18

Commissioner's decision denying the Plaintiff's applications for DIB and SSI. I accordingly recommend that Defendant's Motion for Summary Judgment be **DENIED**, that Plaintiff's Motion for Summary Judgment be **GRANTED IN PART**, by reversing the Commissioner's decision pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), with a remand of the cause to the Commissioner for further proceedings consistent and in accord with this Recommendation for Disposition, and that this action be **RETIRED** from the Court's docket.

Any party may, within ten (10) days after being served with a copy of this Recommendation for Disposition, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable W. Craig Broadwater, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail an authenticated copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 8 day of November, 2005.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE